# THE MYSTIC.[1]

## BISHOP and others v. THE MYSTIC.

*(District Court, N. D. Illinois.* November 22, 1886.)

1. TOWAGE—SERVICES RENDERED IN HOME PORT—LIEN FOR—RANK.
    The usefulness of tugs in coming in and out of port have made them a necessary auxiliary to vessels propelled by sails. As the tug is the substitute for both seamen and pilot, the owner of the tug is at least equally, with the pilot, entitled to a lien for his services when rendered in the home port of the tow.

2. SAME—SEAMEN'S WAGES.
    As between conflicting lien claimants, seamen's wages precede towage bills; the latter are entitled to priority over mortgages, and home port supply claims.

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar

In Admiralty. Petition of intervention against proceeds for towage services in home port.

*Schuyler & Kremer*, for libelants.

*H. W. Magee*, for Jacob Johnson.

BLODGETT, J. On October 9, 1885, the schooner Mystic was libeled for seamen's wages, and a monition was duly issued upon which the schooner was seized, and under which she was subsequently sold, and the proceeds brought into court. Various parties have intervened against the proceeds, among whom is Jacob Johnson, who claims under a mortgage on the schooner, dated in December, 1884, and duly recorded in the home port; the amount due on said mortgage being something over $2,200, which, if allowed, will exhaust the entire proceeds remaining in the court. The Dunham Towing & Wrecking Company and others have also intervened against these proceeds for the amount of $199 for towage services rendered in towing the schooner from Lake Michigan into and out of and about the harbor of Chicago, at the request of the master of said schooner, while in or near the port of Chicago, which services it is claimed constitute a maritime lien on the tug, and should have preference over this mortgage and the home port supply claims.

The only question in the case is whether this intervenor has a maritime lien for these towage services rendered in the home port of the schooner. I am of opinion that this claim of towage is and should be considered a maritime lien upon the schooner. It is a conceded fact in this case (and if it were not, probably the court would take notice of the usual course of maritime business in this port) that all vessels entering and leaving the port of Chicago are required by the ordinances of this city to do so in the tow of a tug; and the usual course of business is for the tug to take vessels in tow at some point outside of the entrance to the harbor, and tow them to the dock to which they are consigned. This class of service takes the place of the labor of the crew, and I can see no reason why it is not to be treated as next in rank, if not in the same order of priority, as seamen's wages. It is probably, however, more analagous in the nature of the service to pilotage, as the use of the tug dispenses with the necessity of a pilot to bring the vessel into the harbor and take her to her dock; and by such analogy ought undoubtedly to be subordinate to the seamen's wages. The court must take notice of the fact, that by the introduction of steam even sailing vessels have become largely dependent upon tugs and towing vessels to take them into and out of harbors; and this is specially necessary in a harbor like that of this city where there are long devious channels which can only be threaded by the aid of a tug, or the almost impracticable means of warping. It is urged that a different rule was adopted by this court in the case of *The Kate Hinchman*, 7 Biss. 238, and an examination of the record in that case shows that among the claims treated as home-port claims were certain items for towage. In that case, however, no question was made as to whether there was any distinction between the

claims for towage and the ordinary claims for supplies in the home port, the contention in that case being that all home-port claims should have preference to the mortgage, and by common consent they were all treated as equal home-port claims, and the mortgage preferred to them. A more careful consideration of the question has satisfied me that towage, especially in and out of the Chicago harbor and while in the harbor, should be treated as a maritime lien. The docks upon the Chicago river to which the cargoes of most of the sail-vessels are consigned, and the grain elevators from which cargoes are taken, are many of them so far up the stream that they would be practically inaccessible to sail-vessels but for the assistance of steam-tugs, so that even if the ordinances of the city did not compel the employment of tugs by all sail-vessels in the river, so much time would be lost in warping up and down the stream as to seriously abridge the usefulness of sail-vessels in our lake commerce. The steam-tug has therefore become a necessary auxiliary to the sail-vessel, taking the place of seamen to warp them, and of pilots to guide them into and out of the harbor, and to and from their docks; and as the tug is substituted for the services of the seamen and pilots, it is but right that they should be allowed a lien at least to the same extent as that for pilotage.

A decree may be entered directing the payment of this towage claim as a lien upon the proceeds prior to that of the mortgage.